**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERNATIONAL GOLD STAR, INC., | **JURY TRIAL DEMANDED** |
| *Plaintiff,* | |
| - against - | Civil Action No.: <u>18-cv-7405</u> |
| LINDA INTERNATIONAL TRADING COMPANY, INC., GLOBAL IMPORTING GROUP, INC., INTEGRA TRADING, INC., MEGA FOOD INTERNATIONAL, INC., ZENITH FOODS LLC, BALT TRADE, LLC, AGROTRADE, INC., HRAZDAN CORPORATION, GRANTE FOODS INTERNATIONAL LLC., and COMPANIES 1-10, the names being fictitious but intending to represent importers and distributors of infringing products, | **COMPLAINT** |
| *Defendants.* | |

Plaintiff, International Gold Star, Inc. ("Gold Star" or "Plaintiff"), by and through its attorneys, Sauchik & Giyaur, P.C., as and for its Complaint against the defendants, Linda International Trading Company, Inc. ("Linda"), Global Importing Group, Inc. ("Global"), Integra Trading, Inc. ("Integra"), Mega Food International, Inc. ("Mega"), Zenith Foods LLC ("Zenith"), Balt Trade, LLC ("Balt Trade"), Agrotrade Inc. ("Agrotrade"), Hrazdan Corporation ("Hrazdan"), Grante Foods International LLC ("Grante"), and Companies 1-10 (Linda, Global, Integra, Mega, Zenith, Balt Trade, Agrotrade, Hrazdan, Grante, and Companies 1-10 are referred to, collectively, as "Defendants"), alleges upon personal knowledge, information and belief, and due investigation, the following:

## PRELIMINARY STATEMENT

1.      Plaintiff is the exclusive authorized distributor in the United States of certain beverage products manufactured in Ukraine by Carlsberg Ukraine, bearing the trademark "Kvas

Taras". Kvas Taras is a type of "kvas" – a traditional Slavic and Baltic beverage commonly made from rye bread. The beverage is popular among individuals of Eastern European ancestry, and is commonly sold in stores catering to those individuals.

2.       This is an action for federal false designation of origin, false advertisement, false description and dilution, in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), deceptive trade practices in violation of New York General Business Law § 349, and under common law.

3.       By this action, Plaintiff seeks to redress the wrongs occasioned by the Defendants' false designation of origin, false advertisement, false description and dilution, unfair competition, and other illegal and wrongful acts. Defendants have imported, with an intent to distribute, and are currently distributing, certain diverted "grey market" beverage products that have been adulterated and mislabeled and, as such, are illegal to sell in the United States.

4.        Defendants' acts harm consumers who mistakenly believe that they purchase the highest quality products that they associate with the well-known brand when they, in fact, are buying materially different products through unapproved distribution channels. Moreover, the products distributed by Defendants are alcoholic beverages within the meaning of 27 U.S.C. § 214, although not labeled as such, in violation of 27 U.S.C. § 215, and the sale of such products harms the general public.

5.       Kvas Taras, manufactured in Ukraine, is made in factories owned by Carlsberg Ukraine, which is part of Carlsberg Group, one of the world's largest manufacturers of beer and soft drinks. Carlsberg Ukraine manufactures different types of beer as well as soft drinks, such as Kvas Taras.

6.       The association with the world-renown brand, Carlsberg, is extremely important to the success of Kvas Taras, since consumers associate this ethnically-specific product with the

reliability and recognition of the parent company, Carlsberg, which has been in business since 1847.

7.      Kvas Taras products are sold worldwide, including in the United States. Carlsberg Ukraine has chosen one of the oldest and most respected importers of ethnic Eastern European products, Gold Star, to be its exclusive importer into, and authorized distributor of, Kvas Taras in the United States.

8.      On April 10, 2012, Carlsberg Ukraine registered a trademark, Serial Number 79098599, with the United States Patent and Trademark Office; specifically, the word mark in Cyrillic with the English transliteration "Kvas Taras"

9.      Carlsberg Ukraine has developed a line of products specifically for exporting into the United States.  These products include plain Kvas Taras as well as Kvas Taras Dark.

10.     Kvas Taras products intended for export to the United States are bottled in bottles of certain shape and have labels of certain type.  Moreover, at least one type of Kvas Taras products approved for import into the United States have undergone Kosher certification and bears the Kosher Certification seal that is widely recognized thus rendering Kvas Taras acceptable in the United States for Kosher observers.

11.     The labeling on the product specifically includes the statement that the exclusive importer of Kvas Taras in the United States is Gold Star.

12.     Over many years of cooperation with Carlsberg Ukraine, Gold Star has developed a reputation among consumers as a reliable, responsible distributor who can be trusted to adhere to the highest standards in product handling and quality control.  Through close cooperation with Carlsberg Ukraine, Gold Star has carefully cultivated this relationship for many years.  Carlsberg Ukraine and Gold Star's reputation is presently in danger of being destroyed by the named

Defendants and Companies 1-10, who have imported, and continue to import and distribute products that will likely cause consumer confusion and harm the goodwill of Gold Star.

13.     Defendants have obtained Carlsberg Ukraine products from sources that are outside the only distribution channel approved by Carlsberg Ukraine.  Carlsberg Ukraine and Gold Star take great care to ensure that the genuine Carlsberg Ukraine products are shipped to the United States under certain conditions designed to maintain their quality and integrity.  With diverted Carlsberg Ukraine products, like the ones sold by Defendants, neither Carlsberg Ukraine nor Gold Star, have any assurances that such products are being handled and stored under safe conditions.  Defendants are attempting to flood the United States market with products that are not intended for distribution in the United States, that are mislabeled as non-alcoholic when they are, in fact, alcoholic beverages, that have been warehoused in foreign facilities not registered by the FDA, that are materially different from the ones approved for import into the United States, that are mislabeled, and that have not been transported to the United States under acceptable temperature- and humidity-controlled conditions.

14.     As will be further alleged in this Complaint, Carlsberg Ukraine products intended for export to the United States are materially different from those that are manufactured for domestic consumption and export to other countries but diverted to the United States – the so-called "grey market" Kvas Taras products.

15.     Defendants' unauthorized importation and subsequent distribution causes, or is likely to cause, consumer confusion, mistake, and deception to the detriment of Carlsberg Ukraine, Gold Star, as well as consumers.  As a result of Plaintiff's extensive branding, marketing, sales, and quality control efforts in the United States, consumers in the United States expect a certain quality, packaging, and overall image from Kvas Taras-branded products.  When such consumers encounter the diverted products, which bear certain of Carlsberg Ukraine's

trademarks but are materially different from what U.S. consumers expect, they are likely to be confused.

16.     Defendants' importation and sales of diverted products cause great damage to Gold Star.

## PARTIES

17.     Plaintiff Gold Star is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York.  Gold Star is the exclusive importer of Kvas Taras products into the United States.

18.     Defendant Linda is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York.  Linda is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

19.     Defendant Global is a corporation organized and existing pursuant to the laws of the State of Oregon, with its principal place of business in Portland, Oregon.  Global is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

20.     Defendant Integra is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York.  Integra is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

21.     Defendant Mega is a corporation organized and existing pursuant to the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.  Mega is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

22.    Defendant Zenith is a limited liability company organized and existing pursuant to the laws of the State of New York, with its principal place of business in Brooklyn, New York.  Zenith is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

23.    Defendant Balt Trade is a limited liability company organized and existing pursuant to the laws of the State of Washington, with its principal place of business in Fife, Washington.  Balt Trade is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

24.    Defendant Agrotrade is a corporation organized and existing pursuant to the laws of the State of New Jersey, with its principal place of business in Linden, New Jersey.  Agrotrade is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

25.    Defendant Hrazdan is a corporation organized and existing pursuant to the laws of the State of California, with its principal place of business in North Highlands, California. Hrazdan is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

26.    Defendant Grante is a limited liability company organized and existing pursuant to the laws of the State of Illinois, with its principal place of business in Grove Village, Illinois. Grante is engaged in the business of, among other things, importing, selling, marketing and distributing beverage products in the United States.

27.    Defendants Companies 1-10 are fictitious names, intended to represent the entities, other than the named Defendants, that have engaged, or currently engage, in the conduct alleged in this Complaint.

## JURISDICTION AND VENUE

28.     The Court has subject matter jurisdiction over this action under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367; and general principles of ancillary and pendent jurisdiction.

29.     The amount of damages at issue exceeds $75,000, exclusive of interest and costs.

30.     The Court has personal jurisdiction over the Defendants because they regularly transact or have transacted business in the Eastern District of New York by, for example, importing diverted Carlsberg Ukraine goods into the state of New York to consumers in the State of New York.

31.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and one or more of the Defendants is subject to personal jurisdiction in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

*A.*     *Carlsberg Ukraine and Gold Star's Business*

32.      Private Joint Stock Company Carlsberg Ukraine ("Carlsberg Ukraine") is a company with its principal office in Zaporizhzhia, Ukraine.  Carlsberg Ukraine is part of Carlsberg Group, one of the world's largest manufacturers of beer and soft drinks.

33.     Carlsberg Ukraine manufactures different types of beer as well as soft drinks, such as Kvas Taras.

34.     Kvas Taras is a type of "kvas" – a traditional Slavic and Baltic beverage commonly made from rye bread.  The beverage is popular among individuals of Eastern European and Baltic ancestry and is commonly sold in ethnic stores catering to those individuals.

35.     Carlsberg Ukraine's Kvas Taras products are among the most popular Kvas products in the United States.

36.     Kvas Taras enjoys a worldwide reputation for quality, great taste and attractiveness of its packaging design, and stand out among similar products by other manufacturers.  Carlsberg Ukraine enjoys a particularly strong reputation in the United States among immigrants from the former Soviet Union and Eastern European countries.  Carlsberg Ukraine develops, manufactures, and markets products that are familiar to these immigrants by catering their preferences and tastes.

37.     Gold Star is one of the oldest and most reputable suppliers and importers of Eastern European specialty foods in the United States.  Gold Star has been in business since 1981, and has acquired stellar reputation in Russian, Eastern European, Middle Eastern, Asian, Kosher and Natural/Organic market segments.

38.     Carlsberg Ukraine has, in cooperation with Gold Star, developed several Kvas products specifically for the United States market.  These products are attractively and distinctly packaged, are particularly suited to the tastes of U.S. consumers, and comply in all respects with all U.S. laws and regulations.  The particular brand of Kvas that Carlsberg Ukraine has produced for the United States market is Kvas Taras in distinctive bottles and bearing factory labels that are in English.

39.     The information and nutritional label of the best-selling type of Kvas Taras developed for the United States, namely, regular Kvas Taras, is in English and Hebrew.  The product is Kosher, which is confirmed by the Kosher Certification that appears pre-printed on the label.  The production and expiration date under United States standards is pre-printed on the cap of each bottle.

40.     The Kvas Taras products that Carlsberg Ukraine manufactures for the United States market and sells through Gold Star all bear a distinct trademark "Kvas Taras" or "Квас Тарас" (in Cyrillic).

41.     Genuine Kvas Taras destined for export into the United States is packaged as follows and has the following label:




42.     Kvas Taras products are often the number one choice among consumers who are looking to purchase "kvas" and similar beverages in ethnic stores in the United States. Consumers know that when they choose Kvas Taras products, they can be assured they are buying the highest-quality kvas-type beverages.

43.      Due to the highly perishable nature of Kvas Taras products, it is critical that Kvas Taras products are transported to the United States and stored, after leaving the factory, under specific temperature- and humidity-controlled conditions.

44.     Moreover, certain types of Kvas Taras products, such as Kvas Taras White, have a very limited shelf life – only four months.  Kvas Taras White, therefore, is only suitable for sale in Ukraine and adjoining countries where it can be expeditiously transported.  For that reason, Gold Star does not import Kvas Taras White into the United States.

45.     For almost eight years, Gold Star has been the exclusive importer of Kvas Taras products into the United States.  Carlsberg Ukraine and Gold Star have signed an exclusive distributorship agreement whereby Gold Star was named the exclusive distributor of Kvas Taras products in the United States.

46.     Pursuant to the distributorship agreement, Gold Star must purchase and distribute at least a certain minimum quantity of Kvas Taras in the United States, must engage in marketing and promotion of Kvas Taras, and must adhere to the high standards of storage and handling of Kvas Taras's products.

47.     The practice of manufacturers of foreign food and beverage products signing exclusive distributorship agreements with domestic importers is widespread.  Typically, the foreign manufacturer benefits from the domestic distributor's marketing efforts and customer support, while the domestic distributor benefits from better access to the product and priority relationship with the manufacturer, among other things.  For that reason, most importers of food

and beverage products in the ethnic Eastern European market segment have such agreements with foreign manufacturers and know who the exclusive distributor is for most products for which they are not the exclusive distributors.

48.     Gold Star and Carlsberg Ukraine have gone the extra step - the product and nutritional label of Kvas Taras products intended for export to U.S. lists Gold Star as the exclusive distributor of Kvas Taras.  The name of Gold Star identifying it as the exclusive distributor is printed on the factory wrapper of each authorized bottle of Kvas Taras rather than on a sticker that many importers apply to factory packaging of imported products.  This significantly improves the reputation and recognition of Gold Star as the entity inseparably associated with Kvas Taras in the eyes of consumers as well as other distributors.

49.     Gold Star works closely with Carlsberg Ukraine on developing the best ways to market Kvas Taras products in the United States.  It is instrumental in Carlsberg Ukraine's efforts to present its products for the United States market.

50.     Gold Star has spent considerable efforts and made enormous investments of time and money in promoting Kvas Taras products in the United States.  Gold Star routinely studies the tastes of United States' consumers and works with Carlsberg Ukraine to tailor Kvas Taras products accordingly, participates in numerous exhibitions, presentations, sample sales, develops, together with Carlsberg Ukraine, marketing materials, cultivates relationships with local stores and their proprietors, and advertising Carlsberg Ukraine products on radio, television, in print and elsewhere.  Gold Star has devoted great attention to ensure that Kvas Taras products are consistently among the best sellers among similar products.

51.     Gold Star is in charge of shipping and importing Kvas Taras into the United States, storage of the products at its warehouse, and transporting them to hundreds of stores that sell them.  In doing so, Gold Star adheres to the highest standards developed by Carlsberg

Ukraine that ensure that the products are not exposed to extreme heat and humidity levels, that they have not expired, and are safe for consumers.  Gold Star ensures compliance of Carlsberg Ukraine products with all applicable laws and regulations applicable to food products of this type.

52.     Gold Star handles customer relationships for Carlsberg Ukraine in the United States.  Gold Star ensures the effectiveness of recalls of Carlsberg Ukraine products, answers customer questions and addresses their concerns, accepts suggestions from customers and transmits them to Carlsberg Ukraine, and replaces products for consumers in the rare instances when products do not meet their expectations.  Gold Star carries product liability insurance for the products it distributes.

53.     Gold Star ensures compliance with the U.S. Food and Drug Administration ("FDA") labeling and Prior Notice requirements with respect to Carlsberg Ukraine products.  It works with Carlsberg Ukraine to ensure that the label properly and conspicuously lists all required information and that the FDA is duly advised prior to the importation of Carlsberg Ukraine products into the United States.

**B.     *Carlsberg Ukraine's Trademark***

54.     Carlsberg Ukraine has registered the following U.S. Trademark (the "Mark"):

# КВАС ТАРАС

55.     The trademark was registered on the Principal Register of the United States Patent and Trademark Office on April 10, 2012, as U.S. Registration Number 4,123,729.  A copy of Carlsberg Ukraine's Registration Certificate is attached hereto as part of **Exhibit "A"**.

56.     Carlsberg Ukraine has used Carlsberg Ukraine Marks and other distinct names and features in commerce in the United States for at least five years.

57.     Carlsberg Ukraine has also registered numerous trademarks worldwide.

58.     The sale of Carlsberg Ukraine's products in the United States has been tremendously successful in part due to Gold Star's marketing and promotion of the Carlsberg Ukraine brand throughout the country.

59.     Gold Star distributes approximately 200 tons of Kvas Taras every year in the United States alone and, but for Defendants' wrongful acts, would be distributing at least twice as much.

60.     The Kvas Taras brand is recognized in the United States and throughout the world as associated with high-quality, great-tasting beverages sourced from ecologically pure ingredients.  Carlsberg Ukraine goods are sold in grocery stores throughout the United States.

61.     As a result of Gold Star's extensive advertising and promotion of Carlsberg Ukraine's goods in connection with, among other things, the Mark, Gold Star's widespread and long-running sale of Kvas Taras, and the celebrity that the Mark has achieved, beverage products manufactured by Carlsberg Ukraine and distributed by Gold Star have been and are now recognized by the consuming public in the United States and in the trade as originating from a single source: Carlsberg Ukraine and Gold Star, as its exclusive distributor.

62.     Beverage products bearing the Mark have come to be known by the purchasing public throughout the United States and abroad as beverage products of the highest quality.  As a result, the Mark and the goodwill associated with it are of inestimable value to Carlsberg Ukraine and Gold Star.

63.     Gold Star has used and is currently using the Mark in commerce and in connection with its sale of Kvas Taras and plans to continue such use in the future.

### C.     Defendants Imported Grey Market Kvas Taras

64.     In or about 2017, and possibly earlier, Defendants imported, and continue to import, into the United States a large quantity of "grey market" Kvas Taras products.

65.     Upon information and belief, Defendants purchase Kvas Taras from one or more distributors in Ukraine, known as "consolidators."  Defendants are now offering these products for sale in the United States and are actively marketing these products.

66.     Kvas Taras that Defendants have purchased were not authorized by Carlsberg Ukraine to be exported to the United States.

67.     Defendants have neither sought, nor received, consent from Gold Star to distribute Kvas Taras products in the United States.

68.     Upon information and belief, the distributors, from which Defendants purchased these products, were not registered with the FDA in violation of the FDA Food Safety Modernization Act, and the information submitted by Defendants to the relevant authorities concerning these distributors' FDA registrations and approvals was most likely falsified.

69.     Defendants created and placed counterfeit nutritional and packaging label on the diverted Kvas Taras, without Carlsberg Ukraine's or Gold Star's consent and in violation of the FDA rules and regulations.

70.     The diverted Kvas Taras beverages and genuine Kvas Taras beverages authorized for sale in the United States are materially different.

### C.     Material Differences Between U.S. and Diverted Carlsberg Ukraine Products

71.     Defendants acquire Kvas Taras products from distributors in Ukraine in contravention of official and sanctioned distribution channels and import them into the United States.  In doing so, Defendants violate several FDA regulations, as well as cause consumer

confusion and cause permanent damage to Carlsberg Ukraine's and Gold Star's goodwill and reputation.

72.     Defendants import into the United States products that are not destined for the United States but are rather intended for domestic consumption in Ukraine and adjoining countries.  Kvas Taras destined for the United States and those intended to be sold in other countries are materially different both in terms of packaging, labeling, as well as quality. Defendants attempt to deceive U.S. consumers that the diverted Kvas Taras goods are U.S.-approved products distributed through official distribution channels and in doing so are perpetuating fraud upon consumers and violate FDA laws and regulations.

73.     **Diverted Kvas Taras Is an Alcoholic Beverage That Is Sold in the United States in Violation of 27 U.S.C. §§ 214-215.**  Defendants have imported and are selling in the United States diverted Kvas Taras that is an alcoholic beverage, not labeled as such, in violation of 27 U.S.C. §§ 214-215.

74.     27 U.S.C. § 214 defines an "alcoholic beverage" as "any beverage in liquid form which contains not less than one-half of one percent of alcohol by volume and is intended for human consumption."

75.     27 U.S.C. § 215 sets forth mandatory labeling requirements for alcoholic beverages.

76.     27 U.S.C. § 218 provides for a civil penalty for violation of the labeling law "of not more than $10,000, and each day shall constitute a separate offense."

77.     Because kvas is generally produced using the same equipment as beer, significant quantities of alcohol may infiltrate kvas following production of beer batches when the equipment is not thoroughly cleaned or evacuated of beer prior to production of kvas batches.

78.     The process of producing Kvas Taras destined for export to the United States differs from the process of producing Kvas Taras for domestic consumption and sale in other countries materially differs in that, among other things, prior to producing Kvas Taras destined for the United States, the manufacturer takes extra measures to evacuate all leftover beer from its equipment prior to running so-called "Scheduled Export Bottlings".

79.     Diverted Kvas Taras has not undergone the alcohol removal process and, consequently, contains alcohol significantly in excess of what is permissible by law for non-alcoholic beverages.

80.     For instance, on November 30, 2018, diverted Kvas Taras distributed by defendant Agrotrade demonstrated alcohol content of .8% by volume in a test performed by an independent highly-qualified food testing laboratory.  This makes it an alcoholic beverate.

81.     Upon information and belief, all diverted Kvas Taras distributed by all Defendants is in violation of 27 U.S.C. §§ 214-215.

82.     Distribution of illegally labeled Kvas Taras is not only in violation of federal laws, but also harms the general public and significantly tarnishes the reputation of Gold Star and Carlsberg Ukraine.

83.     **Diverted Goods Are Not for Sale in the United States**.  Carlsberg Ukraine manufactures products for export into the United State and for domestic consumption.  Even though these products are manufactured in the same facilities, these products are different in many respects in terms of handling and packaging.

84.     The first critical difference between the genuine, U.S.-destined Kvas Taras products and those that are diverted by Defendants is that the genuine Carlsberg Ukraine products have, on their factory-manufactured packaging, a designation that the exclusive distributor in the United States is Gold Star.  Diverted Kvas Taras do not have such designation.

85.     FDA regulations require that the name, address and phone number of the distributor be prominently featured on imported food products to be distributed in the United States.  The diverted products violate these regulations.

86.     Moreover, diverted Kvas Taras is bottled in different bottles than genuine Kvas Taras that is authorized for sale in the United States.

87.     Diverted Kvas Taras has different packaging labels than that which is authorized for sale in the United States.  Specifically, the packaging labels are in the Ukrainian language, and feature different artwork than what is used on the genuine Kvas Taras.

88.     Finally, Defendants import into the United States and distribute the product that has neither been authorized for export into the United States, nor is imported into the United States by Gold Star, namely, Kvas Taras White.

89.     **Defendants Place Counterfeit, False and Misleading Labels on Diverted Products**.  To circumvent FDA regulations and deceive consumers, Defendants place counterfeit labels on diverted Kvas Taras products.  Without authorization from Carlsberg Ukraine or Gold Star, Defendants place substandard-looking labels that diminish the look of the packaging and misstate the ingredients, nutritional facts, and falsify expiration dates of Kvas Taras products.

90.     For instance, Defendant Agrotrade places the following label on the diverted Kvas Taras:



91.     This label misstates the real nutritional information of Kvas Taras.  Specifically:

a.   The label lists that Kvas Taras has 9 grams of fat per serving, when, in reality, there is none.  This obviously diminishes the appeal of the product and is outright false.

b.   The label indicates that Kvas Taras has 18 grams of carbohydrates when the real quantity is only 16 grams.

c.   The label omits the required designation of the country of origin, namely, Ukraine.

92.     Even more egregious is the conduct of Defendant Grante.  Not only does it import the unauthorized product into the United States, namely, Kvas Taras White, but it places the following label on this product:



93.

94.     Specifically, the label is misleading and improper in the following manner:

   a.   The label does not comply with the current FDA labeling requirements as to
        size, composition, and content;

   b.   The label states that there are no sugars when, in fact, the content of sugars in
        this product is quite significant – a critical issue for many consumers;

   c.   Most importantly, the label is clearly deceptive by stating that the expiration
        date of the product is July 13, 2019.  This is clearly fraudulent because Kvas
        Taras White has a shelf life that is only 120 days and is, for that reason, not
        imported into the United States.

95.     Other Defendants place similarly false and misleading labels on diverted
products.

96.     **Diverted Kvas Taras Was <u>Not</u> Stored and Handled at FDA-Approved Facilities.**  The facilities that manufacture Carlsberg Ukraine products in Ukraine, as well as Gold Star's facilities, are all registered with FDA.

97.     Defendants obtain diverted Kvas Taras from distributors in Ukraine, known as "consolidators" in contravention of the only official Carlsberg Ukraine distribution channel – Gold Star.  Upon information and belief, the consolidators, which store and handle Carlsberg Ukraine products subsequently sold to Defendants, have never been registered with FDA.

98.     **Defendants Do Not Meet Carlsberg Ukraine's Standards When Transporting and Handling Kvas Taras.**  Upon information and belief, Defendants transport and handle Carlsberg Ukraine products in violation of the strict standards that Carlsberg Ukraine has established for its products.  While Gold Star strictly adheres to these protocols, Defendants do not.

99.     Deviation from acceptable handling methods causes irreversible damage to the product and may even result in it being unsafe for consumption.  As a result, the products that Defendants introduce into the stream of commerce are materially different from the genuine Kvas Taras products.

100.    **Diverted Products Are Not Kosher**.  Another critical difference between the genuine product destined for distribution in the United States and those diverted by Defendants is that the genuine products are kosher while the diverted products are not.

101.    Kvas Taras that is authorized for sale in the United States contains a well-known Kosher designation.

102.    The kosher status of genuine Kvas Taras is essential to many consumers who are observant Jews.

103.    Many consumers who purchase Kvas Taras may be confused into believing that the diverted Kvas Taras is kosher, just like the genuine Kvas Taras is, and mistakenly consume such products.

104.    Therefore, Defendants have and continue to mislead and confuse consumers by attempting to pass diverted Carlsberg Ukraine products as genuine and in doing so continue to cause irreparable and monetary harm to Carlsberg Ukraine and Gold Star.

## FIRST CLAIM FOR RELIEF

### Federal Unfair Competition and False Advertisement
### 15  U.S.C. § 1125(a)(1)(A) and (a)(1)(B) (Lanham Act Section 43(a))

105.    Plaintiff incorporates paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.    Defendants have, without authorization, imported into the United States and/or distributed and/or sold in the United States and/or received in interstate commerce, diverted Kvas Taras products featuring Mark, which products are materially different from Kvas Taras goods authorized by Carlsberg Ukraine for sale in the United States.  Such use is likely to cause confusion, or to cause mistake and/or to deceive as to the affiliation, connection or association of Defendants with Carlsberg Ukraine, and as to the origin, sponsorship or approval by Carlsberg Ukraine of Defendants' diverted Carlsberg Ukraine goods and the commercial activities related to Defendants' diverted Carlsberg Ukraine goods.

107.    Defendants' acts constitute a false representation and a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

108.    Defendants have similarly violated 15 U.S.C. 1125(a)(1)(B) in that their activities in connection with importing and distributing diverted Carlsberg Ukraine products misrepresents

the nature, characteristics, qualities, and/or geographic origin of their goods, services, or commercial activities.

109.    Defendants' acts have been committed with knowledge of Gold Star's exclusive common law rights and goodwill in the Mark, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

110.    Gold Star has suffered great and irreparable injury, loss, and damage to the goodwill associated with the Mark and Gold Star's status as the exclusive distributor of Kvas Taras, and has suffered damages in an amount to be established at trial.

## SECOND CLAIM FOR RELIEF
### Common Law Unfair Competition

111.    Plaintiff incorporates paragraphs 1 through 110 of this Complaint as if fully set forth herein.

112.    Defendants' acts as set forth at length in this Complaint constitute false advertisement, false designation of origin and false descriptions of Kvas Taras in violation of common law, including the common law of the State of New York and elsewhere.

113.    As a result of Defendants' acts, Gold Star has suffered damages.

## THIRD CLAIM FOR RELIEF
### State Law Trademark Dilution

114.    Plaintiff incorporates paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115.    Defendants' acts have caused, and are likely to continue to cause dilution by blurring and/or tarnishment, and damage the business reputation of Gold Star in violation of state law, including New York General Business Law § 360-l.

116.    Through their acts, Defendants have injured Gold Star's business reputation and/or have diluted and are continuing to dilute the distinctive quality of Gold Star, in violation of state law, including New York General Business Law § 360-l.

117.    Defendants' acts have caused Gold Star damages.

## FOURTH CLAIM FOR RELIEF
### State Law Deceptive Business Practices

118.    Plaintiff incorporates paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    Defendants' acts have Defendants' acts were consumer-oriented.

120.    Defendants' acts were materially misleading.

121.    Defendants' acts have caused and are continuing to cause injury to Gold Star in violation of state law, including New York General Business Law § 349.

122.    Defendants' acts have caused Gold Star damages.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

123.    Plaintiff incorporates paragraphs 1 through 122 of this Complaint as if fully set forth herein.

124.    The Defendants made false representations and material omissions in connection with their sales of diverted Kvas Taras products bearing the Mark.

125.    As a result of these false representations and material omissions, Defendants wrongfully obtained a monetary benefit to which they were not legally entitled.

126.    Defendants benefitted as a result of the profits the Defendants reaped because of the diversion scheme.

127.    Defendants have no right to retain these unjust gains.

128.    If Defendants are permitted to keep this monetary benefit, it would be manifestly unjust.

129.    By selling diverted Kvas Taras in the United States, Defendants have been unjustly enriched at Gold Star's expense in violation of the common law of New York and elsewhere.

## PRAYER FOR RELIEF

**WHEREFORE**, Gold Star demands judgment against all Defendants as follows:

(a) an order entering judgment in favor of Plaintiff against Defendants, jointly and severally;

(b) an order temporarily restraining, and preliminarily and permanently enjoining Defendants from engaging in the unlawful behavior described above;

(c) an order awarding Plaintiffs damages in an amount to be determined;

(d) an order awarding Plaintiffs trebling of damages;

(e) an order awarding Plaintiffs pre-judgment and post-judgment interest;

(f) an order awarding Plaintiffs punitive damages;

(g) an order awarding Plaintiffs reasonable attorneys' fees and other costs; and

(h) for such additional relief as the Court finds just, equitable, and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands a trial

by in this action of all issues so trialble.

Dated:  December 27, 2018

Yours, etc.

SAUCHIK & GIYAUR, P.C.

s/ Alec Sauchik

By: _____

Alec Sauchik
*Attorneys for Plaintiff*
*International Gold Star, Inc.*
17 Battery Place, Suite 305
New York, New York 10004
Telephone: (212) 668-0200
Fax: (212) 668-0222
asauchik@mdrxlaw.com

# EXHIBIT "A"

# United States of America

## United States Patent and Trademark Office

# KBAC TAPAC

**Reg. No. 4,123,729**

**Registered Apr. 10, 2012**

**Int. Cl.: 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

PUBLIC JOINT STOCK COMPANY SLAVUTICH BREWERY (UKRAINE PUBLIC JOINT STOCK COMPANY)
VUL. SAPOZHNIKOVA, 6
M. ZAPORIZHZHYA 69076
UKRAINE

FOR: NON-ALCOHOLIC BEVERAGES, NAMELY, KVASS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE THE NON-LATIN CHARACTERS THAT TRANSLITERATE TO "KVASS", APART FROM THE MARK AS SHOWN.

PRIORITY DATE OF 3-12-2011 IS CLAIMED.

OWNER OF INTERNATIONAL REGISTRATION 1080503 DATED 5-23-2011, EXPIRES 5-23-2021.

THE TRANSLITERATION OF THE NON-LATIN CHARACTERS IN THE MARK IS: "KVAS TARAS".

THE MARK CONSISTS OF THE NON-LATIN CHARACTERS "KBAC TAPAC" IN STYLIZED TEXT.

THE ENGLISH TRANSLATION OF THE FOREIGN WORD(S) IN THE MARK IS: "KVASS TARAS", WHEREIN "KVASS" MEANS A NON-ALCOHOLIC BEVERAGE, AND "TARAS" MEANS A UKRAINIAN MALE FIRST NAME.

SER. NO. 79-098,599, FILED 5-23-2011.

SHANNON TWOHIG, EXAMINING ATTORNEY

*David J. Kappos*

Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  and an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date).  The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the
USPTO website for further information.  With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at http://www.uspto.gov.**

## NEW HOLDER/REPRESENTATIVE OF AN INTERNATIONAL REGISTRATION

### SERIAL NUMBER: 79098599

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **OVERVIEW** | |
| INTERNATIONAL REGISTRATION NUMBER | 1080503 |
| EFFECTIVE DATE OF MODIFICATION | 01/30/2018 |
| NOTIFICATION DATE | 02/15/2018 |
| **HOLDER DETAILS** | |
| CLIENT IDENTIFIER | 1083817 |
| NOTIFICATION LANGUAGE | ENGLISH |
| NAME | PRIVATE JOINT STOCK COMPANY |
| | CARLSBERG UKRAINE |
| ADDRESS | vul. Vasylia Stusa, 6, m. |
| | Zaporizhzhia 69076 |
| COUNTRY | Ukraine |
| ENTITLEMENT ESTABLISHMENT | Ukraine |
| LEGAL NATURE | PRIVATE JOINT STOCK COMPANY |
| LEGAL NATURE: PLACE INCORPORATED | Ukraine (UA) |
| CORRESPONDENCE INDICATOR | YES |
| **REPRESENTATIVE GROUP** | |
| CLIENT IDENTIFIER | 775310 |
| NAME | Nadiya Ivanivna Krylova, |
| | KRYLOVA & PARTNERS |
| ADDRESS | Dmytrivska Str. 56B, office 1 |
| | Kyiv 01054 |
| COUNTRY | Ukraine |
| **PREVIOUS HOLDER DETAILS** | |
| CLIENT IDENTIFIER | 775307 |
| NAME | PUBLIC JOINT STOCK COMPANY |
| | SLAVUTICH BREWERY |
| ADDRESS | vul. Sapozhnikova, 6 |
| | M. ZAPORIZHZHYA 69076 |
| COUNTRY | Ukraine |
| **MISCELLANEOUS INFORMATION** | |
| IB DOCUMENT ID | 1116821901 |

OFFICE REFERENCE                          79098599

TRANSACTION TYPE                          MTN - CHANGE OF HOLDER NAME OR ADDRESS